## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Russell John Hatton and Lloyd Desjarlais, | Case No. 16-cv-3895 (WMW/SER) |
| Plaintiffs, | |
| v. | **REPORT AND RECOMMENDATION** |
| Emily Johnson Piper, Shelby Richardson, Jannine Hèbert, Dr. Peter Puffer, Kathryn Lockie, Nancy Stacken, Dr. Elizabeth Peterson, Kevin Moser, Terry Kneisel, Sandra Bryant, Chad Mesojedec, Jerry Fjerkenstad, Scott Benoit, Gene Anderson, Steve Sajdak, Steve Sayovitz, Dana Osborne, Tara Osborne, Sara Kulas, Meg McCauley, Sharlonda Pierce, Ross Peterson, Mark Hansen, Donald Geil, and Kyle Rodgers, *in their individual and official capacities*, | |
| Defendants. | |

The above-captioned case comes before the undersigned on Defendants' Motion to Dismiss, (ECF No. 17), and Plaintiffs' Motion for Leave to Amend Complaint, (ECF No. 42).[1] This matter was referred for the resolution of pretrial matters pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. (ECF No. 24). For the reasons stated below, this Court recommends Defendants' motion be granted, Plaintiffs' motion to amend be denied, and this matter be dismissed.

---

[1] Also before the Court is Plaintiffs' Motion to Except [sic] Plaintiffs['] Late Reply to Defendants' Reply of May 11, 2017. (ECF No. 31). Defendants never opposed the motion and Plaintiffs filed their brief simultaneously with their motion. Accordingly, this Court recommends granting the motion and will consider Plaintiffs' brief, (ECF No. 32), along with the other filings in this matter.

# I.    PROCEDURAL BACKGROUND

Plaintiffs Russell John Hatton and Lloyd Desjarlais initiated suit on November 10, 2016. (Compl., ECF No. 1). Hatton and Desjarlais are civilly committed in the Minnesota Sex Offender Program ("MSOP") in Moose Lake, Minnesota. They assert that Defendants—MSOP employees—are responsible for restrictions placed on the practice of their Native American religious beliefs. Hatton and Desjarlais brought suit pursuant to 42 U.S.C. § 1983 under the First, Fourth, and Fourteenth Amendments to the United States Constitution, Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*, the American Indian Religious Freedom Act ("AIRFA"), 42 U.S.C. § 1996 *et seq.*, and the Minnesota Constitution.

Defendants moved to dismiss the complaint on various grounds. (ECF No. 17). The parties submitted briefing on the motion, (ECF Nos. 20, 28, 29, 32), but before the motion could be ruled upon this case was stayed on June 30, 2017 as it was deemed sufficiently related to the ongoing class-action litigation of *Karsjens, et al. v. Piper, et al.*, Case No. 11-cv-3659 (DWF/TNL), (ECF No. 34). The stay was lifted on October 22, 2018, (ECF No. 39), and this Court permitted the parties an opportunity to file supplemental briefing addressing any changes in law that may affect the Court's analysis of the already-submitted motion to dismiss, (ECF No. 40). Supplemental briefs were submitted and the motion is ripe for determination. (ECF Nos. 41, 43).[2] Simultaneous

---

[2] Defendants argue Plaintiffs' claims are precluded by a ruling in the class-action litigation of *Karsjens v. Jesson*, where the court found that the MSOP's religious policies are reasonably related to legitimate therapeutic and institutional interests. 336 F. Supp. 3d 974, 991–93 (D. Minn. 2018). While this Court agrees that the *Karsjens* decision is relevant to the analysis here, the ruling only broadly references "MSOP's policies and practices relating to religion" which include "restrictions on room usage for

with their supplemental brief, Plaintiffs moved to amend their complaint. (ECF No. 42).

## II.      FACTUAL BACKGROUND

Desjarlais received a Behavioral Expectation Report ("BER") for misconduct—a rule violation—on September 8, 2016. (Compl., at 14; Aff. of Lloyd Desjarlais, at 1, ECF No. 3). Because of the BER, Desjarlais was on Restriction Status III[3] from September 11 to November 20, 2016. (Compl., at 14; Desjarlais Aff., at 1). Hatton received a BER for misconduct on October 8, 2016. (Compl., at 12; Aff. of Russell Hatton, at 1, ECF No. 2). Hatton was placed on Restriction Status III for 28 days, from October 13 through November 9, 2016. (Compl., at 12–13; Hatton Aff., at 1).

On September 11, 2016, Hansen and Pierce told Desjarlais he could not attend Native American religious services due to the BER he received three days prior. (Compl., at 14; Desjarlais Aff., at 1). Likewise, on October 13, 2016, MSOP employees Randy Gordon,[4] Benoit, Sayovitz, and Tara Osborne told Hatton he could not attend Native American religious services due to the BER he received five days prior. (Compl., at 12). Hatton and Desjarlais assert they were denied the opportunity to participate in sweat lodge ceremonies, pipe ceremonies, smudge ceremonies, indoor and outdoor talking circles, and special events. (Compl., at 13, 14).

---

religious meetings, clothing and jewelry restrictions, restrictions on religious articles, and restrictive policies governing meetings with clergy." *Id.* at 992. Accordingly, this Court finds it appropriate to address Plaintiffs' claims with respect to the specific enforcement of those policies as applied to Plaintiffs. Indeed, the *Karsjens* Court was of the "view that its conclusions regarding Plaintiffs' classwide claims will leave any individual claims in these and future lawsuits unresolved." *Id.* at 997.

[3] Restriction Status III is a "disciplinary restriction including full restriction from all off-unit privileged activities and all on-unit privileged activities." (ECF No. 20, at 3 n.3) (quoting MSOP Policy No. 303.010). While Restriction Status III is not defined in the complaint, the Court may consider the MSOP Policy defining it because regulations of an agency are public record. *Taradejna v. General Mills, Inc.*, 909 F. Supp. 2d 1128, 1133 n.4 (D. Minn. 2012).

[4] Gordon is not named as a defendant in this matter.

Desjarlais asked Hansen if he had spoken with his supervisor about Desjarlais attending Native American religious services, with Hansen indicating he was following MSOP policy in denying Desjarlais's participation. (Compl., at 14; Desjarlais Aff., at 1). Similarly, Hatton filed a complaint with Bryant regarding his denied access to Native American religious services. (Compl., at 13). Bryant and Hansen each stated that MSOP policy denied religious services to clients on Restriction Status III. (Compl., at 13, 14; Desjarlais Aff., at 1). MSOP clients on Restriction Status III may not attend spiritual group ceremonies or studies, but spiritual self-study materials are available upon client request. (Compl., at 13, 15; Hatton Aff., at 1; Desjarlais Aff., at 1; Aff. of David Bornus, Ex. A, ECF No. 21).

Hatton and Desjarlais allege that when they are permitted to attend Native American religious services, such as the sweat lodge and pipe ceremonies, they are searched and wanded afterwards. (Comp., at 13, 14–15). Hatton and Desjarlais claim this policy is ineffective because MSOP telegraphs when they will search individuals, which ensures contraband will be hidden beforehand and leads to the result that MSOP "has never found any contraband since its inception" of searches following Native American religious services. (Compl., at 13, 14–15).

Plaintiffs assert MSOP policy, and Defendants' enforcement of it, violates their religious rights. Plaintiffs seek to prevent Defendants from withholding religious services "as a tool to punish" Plaintiffs because their religion is therapeutic. (Compl., at 16–17).

## III.    MOTION TO DISMISS

### A.    Legal Standard

When determining a Rule 12(b)(1) motion, courts "must distinguish between a 'facial attack' and a 'factual attack' on jurisdiction." *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (quoting *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)). In a facial attack, like that at issue here, 'the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6).'" *Carlsen*, 833 F.3d at 908 (quoting *Osborn*, 918 F.2d at 729 n.6).

In deciding a Rule 12(b)(6) motion, a court accepts as true all well-pleaded factual allegations and then determines "whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). The court must draw reasonable inferences in the plaintiff's favor. *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Sletten & Brettin Orthodontics v. Cont'l Cas. Co.*, 782 F.3d 931, 934 (8th Cir. 2015) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)); *accord Zink*, 783 F.3d at 1098. Facial plausibility of a claim exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Although a sufficient complaint need not be detailed, it must contain "[f]actual allegations . . . enough to raise a right to relief above the speculative level."

*Twombly*, 550 U.S. at 555 (citation omitted); *see id.* ("The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion of a legally cognizable right of action.") (quotations and citation omitted). Additionally, complaints are insufficient if they contain "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

In assessing a *pro se* complaint, the court applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quotation and citation omitted); *accord Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014). "If the essence of an allegation is discernible," then the court, in applying a liberal construction to *pro se* complaints, "should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). Despite the liberal construal of such complaints, the *pro se* plaintiff "still must allege sufficient facts to support the claims advanced." *Stringer v. St. James R-1 Sch. Dist.*, 446 F.3d 799, 802 (8th Cir. 2006) (quoting *Stone*, 364 F.3d 912, 914 (8th Cir. 2004)). Thus, *pro se* litigants "must set a claim forth in a manner which, taking the pleaded facts as true, states a claim as a matter of law." *Stringer*, 446 F.3d at 802 (quoting *Cunningham v. Ray*, 648 F.2d 1185, 1186 (8th Cir. 1981)).

### B.    Some of Plaintiffs' Requested Relief is Barred

Plaintiffs sue all Defendants in their official and individual capacities. Plaintiffs seek declaratory and injunctive relief, as well as monetary damages, but do not

differentiate how the relief sought applies to Defendants.

The Eleventh Amendment bars suit against a state, absent a state's consent to filing of such a suit. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam). This immunity applies to claims against officials sued in their official capacities. *See, e.g.*, *Will v. Mich. Dep't of State* Police, 491 U.S. 58, 71 (1989). A federal court lacks jurisdiction over claims barred by the Eleventh Amendment. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984). Thus, "Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) (citing *Hafer v. Melo*, 502 U.S. 21, 30 (1991)); *Greenwalt v. Indiana Dept. of Corr.*, 397 F.3d 587, 589 (7th Cir. 2005) ("[S]ection 1983 does not permit injunctive relief against state officials sued in their individual as distinct from their official capacity."); *Wolfe v. Strankman*, 392 F.3d 358, 360 n.2 (9th Cir. 2004) (noting that injunctive and equitable relief are not available in § 1983 individual-capacity suits). Thus, to the extent Plaintiffs seek injunctive relief against Defendants in their individual capacities, such requests for relief must be dismissed. And to the extent Plaintiffs seek monetary relief against Defendants in their official capacities, such requests for relief must also be dismissed.[5]

**C.      Plaintiffs Do Not Plead Personal Involvement of Various Defendants**

Plaintiffs must also allege Defendants' personal involvement or responsibility for the constitutional violations to state a § 1983 claim. *Ellis v. Norris*, 179 F.3d 1078, 1079 (8th Cir. 1999). Moreover, "[g]overnment officials may not be held liable for the

---

[5] Plaintiffs agree. (ECF No. 28, at 4).

unconstitutional conduct of their subordinates under a theory of *respondeat superior*."
*Iqbal*, 556 U.S. at 676. "While the doctrine of respondeat superior does not apply to
§ 1983 cases, a supervisor may still be liable under § 1983 if either his direct action or his
'failure to properly supervise and train the offending employee' caused the constitutional
violation at issue." *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014) (quoting *Tlamka
v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2011)). Thus, "[e]ven if a supervisor is not
involved in day-to-day operations, his personal involvement may be found if he is
involved in 'creating, applying, or interpreting a policy' that gives rise to unconstitutional
conditions." *Jackson*, 747 F.3d at 543 (quoting *Bonner v. Outlaw*, 552 F.3d 673, 679 (8th
Cir. 2009)).

Here, the complaint only pleads actions by Defendants Sandra Bryant, Mark
Hansen, Sharlonda Pierce, Scott Benoit, Steve Sayovitz, and Tara Osborne. Plaintiffs do
not allege any personal involvement by Defendants Emily Johnson Piper, Shelby
Richardson, Jannine Hèbert, Dr. Peter Puffer, Kathryn Lockie, Nancy Stacken, Dr.
Elizabeth Peterson, Kevin Moser, Terry Kneisel, Chad Mesojedec, Jerry Fjerkenstad,
Gene Anderson, Steve Sajdak, Dana Osborne, Sara Kulas, Meg McCauley, Ross
Peterson, Donald Geil, or Kyle Rodgers. The only time these defendants are mentioned in
the complaint is in the section identifying the defendants, asserting each

> continues to damage and has caused injury and implemented, retained and
> carried out practices and policies beyond the legitimate scope of
> employment duties at the MSOP that [violate or violated] the constitutional,
> statutory, and common law rights of Plaintiff's [sic] where [she or he]
> continues to condone and authorize Plaintiff's [sic] to be restricted from
> their Native American Religion.

(*E.g.*, Compl., at 3–12). While there is minor variation in this section as to some Defendants, (*e.g.*, Compl., at 6 (alleging Dr. Elizabeth Peterson "continues to be silent, condone and authorize Plaintiff's [sic] to be restricted from their Native American Religion")), these minor variations do not change the underlying reality that Plaintiffs have failed to plead any, let alone *sufficient*, personal involvement of these defendants.

Moreover, Plaintiffs do not plead how these defendants have responsibility for the alleged constitutional violations committed by Bryant, Hansen, Pierce, Benoit, Sayovitz, and Tara Osborne. Nor do Plaintiffs plead how these defendants are involving in creating, applying, or interpreting the MSOP policy at issue. While it is likely to assume some of the MSOP executive-level defendants oversee the drafting, adoption, and implementation of MSOP policies, Plaintiffs do not allege any facts that lead the Court to this conclusion. As such, Plaintiffs have not plausibly pleaded that the majority of the defendants were involved in the alleged constitutional violations.

Accordingly, Plaintiffs fail to state a claim as to all defendants except Defendants Sandra Bryant, Mark Hansen, Sharlonda Pierce, Scott Benoit, Steve Sayovitz, Tara Osborne. *Beck v. LaFleur*, 257 F.3d 764, 766 (8th Cir. 2001).

**D.    No Cause of Action under AIRFA**

AIRFA provides:

On and after August 11, 1978, it shall be the policy of the United States to protect and preserve for American Indians their inherent right of freedom to believe, express, and exercise the traditional religions of the American Indian, Eskimo, Aleut, and Native Hawaiians, including but not limited to access to sites, use and possession of sacred objects, and the freedom to worship through ceremonials and traditional rites.

42 U.S.C. § 1996. AIRFA does not provide a cause of action or judicially-enforceable rights. *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 455 (1988) ("Nowhere in the law is there so much as a hint of any intent to create a cause of action or any judicially enforceable individual rights."); *Lockhart v. Kenops*, 927 F.2d 1028, 1036 (8th Cir. 1991) ("AIRFA is merely a statement of federal policy to protect Indians' exercise of their religion; it confers no cause of action."); *Crow v. Gullet*, 706 F.2d 856, 858 (8th Cir. 1983) (per curiam) (holding AIRFA does not establish any legal rights or causes of action beyond those recognized under the first amendment). Any claim under AIRFA must be dismissed as no cause of action exists.

### E.    No Cause of Action under the Minnesota Constitution

Plaintiffs also assert Defendants violated the Minnesota Constitution. MINN. CONST. art. I, § 16. The Minnesota Constitution is not self-enforcing and there is no private cause of action for violations. *Eggenberger v. West Albany Twp.*, 820 F.3d 938, 941 (8th Cir. 2016); *Riehm v. Engelking*, 538 F.3d 952, 969 (8th Cir. 2008) ("Minnesota courts explicitly refuse to find causes of action for damages under the Minnesota Constitution on their own unless the Minnesota Supreme Court has recognized the cause of action."). This is fatal to Plaintiffs' claims. Therefore, Plaintiffs fail to state a claim under the Minnesota Constitution.

### F.    RLUIPA Not Triggered

"By enacting RLUIPA, Congress established a statutory free exercise claim encompassing a higher standard of review than that which applies to constitutional free exercise claims." *Murphy v. Missouri Dep't of Corr.*, 372 F.3d 979, 987 (8th Cir. 2004).

Under RLUIPA, for a government to "impose a substantial burden on the religious exercise of a person residing in or confined to an institution," the government must demonstrate that the imposition of the burden on the person "is in furtherance of a compelling governmental interest" and the burden "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). RLUIPA defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). For RLUIPA to apply, however, the substantial burden must be "imposed in a program or activity that receives Federal financial assistance" or affects interstate commerce. 42 U.S.C. § 2000cc-1(b). Because the "statute explicitly requires that substantial burden complained of be imposed in a program or activity that receives federal financial assistance or that the alleged substantial burden affect interstate or foreign commerce," subsection (a) does not apply until the threshold requirement of subsection (b) has been met. *Ephraim v. Angelone*, 313 F. Supp. 2d 569, 575 (E.D. Va. 2003), *aff'd* 68 F. App'x 460 (4th Cir. 2003).

Here, Plaintiffs have not alleged that the MSOP receives federal financial assistance or that the substantial burden imposed affects interstate commerce. Absent such a showing, Plaintiffs cannot invoke RLUIPA, rendering their claim legally deficient. *Bishop v. Jesson*, Case No. 14-cv-1898 (ADM/SER), 2016 WL 8674584, at *18 (D. Minn. Feb. 12, 2016), *adopted by* 2016 WL 906422 (D. Minn. Mar. 9, 2012); *Gutman v. Wriggelsworth*, 2010 WL 1814816, at *4 (W.D. Mich. Feb. 4, 2010) (dismissing RLUIPA claim in context of defendants' Rule 12(b)(6) motion because plaintiff did not

allege that defendants receive federal funding or that the substantial burden he suffered affected interstate commerce); *Murray v. Kansas Dep't of Corr.*, 2009 WL 1617664, at *3 (D. Kan. June 9, 2009) (same). This Court recommends Plaintiffs' RLUIPA claim be dismissed as against Defendants in their official capacities.

Moreover, "a plaintiff cannot bring a § 1983 individual capacity claim under RLUIPA because individual [MSOP] employees do not directly receive federal funding." *Kilgore v. King*, Case No. 13-cv-634 (JRT/FLN), 2014 WL 4231540, at *6 (D. Minn. Aug. 26, 2014). As such, this Court recommends Plaintiffs' RLUIPA claim be dismissed as against Defendants in their individual capacities as well. *Id.*; *see also Sharp v. Johnson*, 669 F.3d 144, 153–55 (3d Cir. 2012); *Stewart v. Beach*, 701 F.3d 1322, 1333–1335 (10th Cir. 2012); *DeMoss v. Crain*, 636 F.3d 145, 151 (5th Cir. 2011); *Nelson v. Miller*, 570 F.3d 868, 889 (7th Cir. 2009).

### G.    First Amendment

"[A] person claiming that a governmental policy or action violates his right to exercise his religion freely must establish that the action substantially burdens his sincerely held religious belief." *Weir v. Nix*, 114 F.3d 817, 820 (8th Cir. 1997).

> Substantially burdening one's free exercise of religion means that the regulation "must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion."

*Patel v. United States Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008) (quoting *Murphy v. Missouri Dep't of Corr.*, 372 F.3d 979, 988 (8th Cir. 2004)).

"[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Courts consider four criteria when applying the test:

> (1) whether there is a valid, rational connection between the regulation and legitimate governmental interests put forward to justify it; (2) whether alternative means of exercising their rights remain open to the prisoners; (3) whether accommodation of the asserted rights will trigger a "ripple effect" on fellow inmates and prison officials; and (4) whether a ready alternative to the regulation would fully accommodate the prisoners' rights at de minimis cost to the valid penological interest.

*Beaulieu v. Ludeman*, 690 F.3d 1017, 1039 (8th Cir. 2012) (quoting *Benzel v. Grammar*, 869 F.2d 1105, 1108 (8th Cir. 1989)). While Plaintiffs are civilly committed persons, not prisoners, the Eighth Circuit has held their "liberty interests are considerably less than those held by members of free society." *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006). Thus, courts apply a modified version of the *Turner* test when analyzing constitutional claims of civilly committed persons, considering the "legitimate institutional and therapeutic interests" rather than "legitimate penological interests." *Karsjens*, 336 F. Supp. 3d at 992 (citing *Ivey v. Mooney*, 2008 WL 4527792, at *5, *10 (D. Minn. Sept. 30, 2008)).

Plaintiffs claim that barring them from group religious activities while on Restriction Status III substantially burdens their Native American religious beliefs. Whether attendance at group Native American religious ceremonies is a sincerely held belief is a factual determination, so this Court will accept it as true in this motion to dismiss. *See Hamilton v. Schriro*, 74 F.3d 1545, 1550 (8th Cir. 1996) (assuming inmate plaintiff's religious beliefs were sincere); *Murphy*, 372 F.3d at 983 (noting the sincerity

of a religious belief is a factual determination, so courts should not dismiss such claims on summary judgment by concluding the claims are not genuine but should instead assume the belief is genuine). Moreover, Plaintiffs' attendance at group religious ceremonies is not an inherently "purely secular view or personal preference" that could preclude a Free Exercise Clause claim. *See Ochs v. Thalacker*, 90 F.3d 293, 296 (8th Cir. 1996) (questioning prisoner's request to be racially segregated as a sincerely held religious belief, but still noting courts "must be cautious in attempting to separate real from fictitious religious beliefs"). Thus, the Court turns to whether Plaintiffs have properly alleged that Defendants have substantially burdened their beliefs.

Looking at the first *Turner* factor, Defendants argue the policy of restricting Plaintiffs from attending group spiritual ceremonies while on Restriction Status III is reasonably related to the MSOP's legitimate interests in safety and security. (ECF No. 20, at 12). Per MSOP Policy No. 303.010, Restriction Status III is imposed only upon a major disciplinary violation, where the MSOP client's behavior is determined to have jeopardized the safety of others. (ECF No. 20, at 12). This Court agrees that there is a valid, rational connection between the limitations from group activities accompanying Restriction Status III, such as no participation in group religious services, and the institutional and therapeutic interests at stake. Indeed, previously the Eighth Circuit upheld MSOP's assertions of client safety and institutional security with respect to its policies. *Beaulieu*, 690 F.3d at 1035 (upholding MSOP policy concerning televisions). As the Eighth Circuit has indicated, at least in the prison setting, "[i]nstitutional security is 'the most compelling government interest in a prison setting,' and security is particularly

important in dealing with group activities because of the potential for riots and the extensive damage resulting therefrom." *Murphy*, 372 F.3d at 983 (quoting *Goff v. Graves*, 362 F.3d 543, 549 (8th Cir. 2004)). And courts "accord great deference to the judgment and expertise of prison officials, 'particularly with respect to decisions that implicate institutional security.'" *Murphy*, 372 F.3d at 983 (quoting *Goff*, 362 F.3d at 549). This Court sees no reason that deference should not apply here.

With respect to the second *Turner* factor, Plaintiffs are permitted alternative means of exercising their religious rights in the form of self-study. This alternative may be unappealing to Plaintiffs given the religious ceremonies they identified appear communal in nature. But there is no requirement that Plaintiffs "be afforded [their] preferred means of practicing [their] religion as long as [they are] afforded sufficient means to do so." *Murphy*, 372 F.3d at 983. This may be true even where a regulation makes it impossible to practice a particular ritual. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 352 (1987).

Turning to the third and fourth *Turner* factors, permitting Plaintiffs to attend group religious ceremonies eviscerates the purpose of Restriction Status III. Restriction Status III is imposed because an MSOP client is deemed a safety threat. The obvious alternative of permitting MSOP clients on Restriction Status III to attend group religious activities ignores the realities of why that status was imposed. To accommodate this alternative, significantly extra security would be required for each religious group activity involving MSOP clients on Restriction Status III. *See Wickner v. Symmes*, Case No. 05-cv-2664 (DWF/RLE), 2007 WL 426795, at *9 (D. Minn. Feb 2, 2007) (accepting prison officials'

argument that staff resources would be drained if required to accommodate smudging and pipe ceremony requests by inmate in segregation unit). The presence of Restriction Status III MSOP clients, with extra security in tow, would likely have deleterious effects on rule-abiding MSOP clients wishing to participate in religious activities. Thus, only by burdening others' religious rights could Plaintiffs' exercise of rights be unburdened. This is not a just cost when considering the institutional and therapeutic interests at stake.

Here, the *Turner* factors, as modified for the MSOP setting, show that the MSOP policy of prohibiting Plaintiffs and other MSOP clients on Restriction Status III from attending group religious activities passes constitutional muster. The policy is reasonably related to the MSOP's legitimate interests in safety and security. Plaintiffs are not prevented wholesale from practicing their religious beliefs as self-study materials are permitted while on Restriction Status III. And finally, accommodating Plaintiffs would impose significant costs on the MSOP institution and other MSOP clients when considering their institutional and therapeutic interests.

### H. Fourth Amendment

"[I]nvoluntarily civilly committed persons retain the Fourth Amendment right to be free from unreasonable searches that is analogous to the right retained by pretrial detainees." *Beaulieu*, 690 F.3d at 1028 (citing *Serna v. Goodno*, 567 F.3d 944, 948–49 (8th Cir. 2009)). To determine "reasonableness" in an institutional setting, a court must balance "the need for the particular search against the invasion of personal rights that the search entails." *Bell v. Wolfish*, 441 U.S. 520, 558–59 (1979). "Although an involuntarily committed patient of a state hospital is not a prisoner per se, his confinement is subject to

the same safety and security concerns as that of a prisoner." *Beaulieu*, 690 F.3d at 1028 (quoting *Revels v. Vincenz*, 382 F.3d 870, 874 (8th Cir. 2004)). Thus, Plaintiffs' claim "turns in part on the extent to which this [c]ourt has sufficient expertise and information in the record to mandate, under the Constitution, the specific restrictions and limitations sought by those who challenge the . . . search procedures at issue." *Florence v. Bd. of Chosen Freeholders of the Cnty. of Burlington*, 132 S. Ct. 1510, 1513 (2012). The Supreme "Court has confirmed the importance of deference to correctional officials and explained that a regulation impinging on an inmate's constitutional rights must be upheld 'if it is reasonably related to legitimate penological interests.'" *Id.* at 1515 (quoting *Turner*, 482 U.S. at 89).

Plaintiffs assert they are routinely wanded and searched following group religious ceremonies. Defendants assert Plaintiffs have not alleged enough factual details to conduct the appropriate legal analysis. (ECF No. 20, at 15–16). This Court disagrees. The institutional safety concerns are plenty, particularly when considering the enclosed, proximal nature of religious ceremonies such as sweat lodges, *Fowler v. Crawford*, 534 F.3d 931, 939 (8th Cir. 2008), or the opportunities to mask contraband with pipe ceremonies, *Wickner*, 2007 WL 426795, at *9. While Plaintiffs assert this search policy is ineffective, courts "accord great deference to the judgment and expertise of prison officials, 'particularly with respect to decisions that implicate institutional security.'" *Murphy*, 372 F.3d at 983 (quoting *Goff*, 362 F.3d at 549). As such, this Court does not find a Fourth Amendment violation.

### I. Fourteenth Amendment

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). Plaintiffs do not allege they are treated differently from other MSOP clients. Indeed, the MSOP policy restricting them from group religious ceremonies applies in full force to all MSOP clients. Without allegations that they are treated differently from other MSOP clients, Plaintiffs' claim fails. *See Carlson v. Ritchie*, 960 F. Supp. 2d 943, 953 (D. Minn. 20130) (dismissing equal protection claim where plaintiff's assumptions about dissimilar treatment were speculative and conclusory).

Plaintiffs argue, in their reply brief, that they are similarly situated to mentally ill and dangerous persons also committed. (ECF No. 28, at 11–12). Ignoring the fact that Plaintiffs raise this new factual argument only in their reply brief, Plaintiffs fail to explain how they are treated differently from persons committed for mental disorders. Nor do Plaintiffs explain the religious practices afforded committed for mental disorders. As such, this Court finds Plaintiffs' argument unavailing.

To the effect Plaintiffs assert a substantive due process claim under the Fourteenth Amendment, it is not separated from their underlying First and Fourth Amendment claims. Therefore, the substantive due process claim cannot proceed because Plaintiffs' constitutional claims are squarely "covered by" the First and Fourth Amendments. *Cty. of*

*Sacramento v. Lewis*, 523 U.S. 833, 842–43 (1998) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.") (quotation omitted).

### J.  Qualified Immunity

"Qualified immunity shields government officials from liability unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would know." *Ferguson v. Short*, 840 F.3d 508, 510 (8th Cir. 2016). Courts examine "(1) whether the facts alleged or shown, construed most favorably to the plaintiffs, establish a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged misconduct, such that a reasonable official would have known that the acts were unlawful." *Small v. McCrystal*, 708 F.3d 997, 1003 (8th Cir. 2013).

Here, Plaintiffs' claims either do not establish constitutional violations or Plaintiffs have failed to meet their pleading burden. To the extent no constitutional violation is established, Defendants are entitled to qualified immunity. To the extent Plaintiffs have failed to meet their pleading burden, their pleading deficiencies deprive the Court of the ability to analyze the claims fully, including whether Defendants are entitled to qualified immunity on those particular claims.

### IV.    MOTION TO AMEND

Plaintiffs move, pursuant to Fed. R. Civ. P. 15(a)(2), (c)(1)(B), and D. Minn. LR

15.1, to amend their complaint. (ECF No. 42).[6] A court should "freely give leave" to amend a pleading before trial when "justice so requires." Fed. R. Civ. P. 15(a). Nonetheless, leave to amend should not be given when there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment[.]" *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Desjarlais asserts that, from December 2017 through August 2018, his primary therapist denied several requests to attend religious ceremonies. (ECF No. 42, at 3). Desjarlais asserts he was denied the opportunity to attend religious ceremonies because MSOP officials concluded he "did not demonstrate positive behaviors the day before." (ECF No. 42, at 3). Desjarlais also seeks to add an additional defendant, Stacy Bovin. (ECF No. 42, at 3).

Desjarlais seeks to add conduct substantively repetitive of allegations in the complaint: that, due to his restricted status, Desjarlais was denied the opportunity to attend group religious ceremonies. These factual additions do not alter this Court's analysis. As such, the amendments would be futile. *See Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) ("Denial of a motion for leave to amend on the basis of futility means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

---

[6] While citing D. Minn. LR 15.1, Plaintiffs have failed to comply with that rule: Plaintiffs did not submit a copy of their proposed amended pleading which is "complete in itself." Because the motion should be denied on the merits, this Court looks past its procedural defects.

Procedure.") (internal quotation marks omitted).

## V.    RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendants' Motion to Dismiss, (ECF No. 17), be **GRANTED**;

2. Motion to Except [sic] Plaintiffs['] Late Reply to Defendants' Reply of May 11, 2017, (ECF No. 31), be **GRANTED**;

3. Plaintiffs' Motion for Leave to Amend Complaint, (ECF No. 42), be **DENIED**; and

4. This matter be **DISMISSED WITH PREJUDICE**.


Date: January 23, 2019                                   _____*s/ Steven E. Rau*_____
                                                         Steven E. Rau
                                                         United States Magistrate Judge
                                                         District of Minnesota

                                                         *Hatton, et al. v. Piper, et al.*
                                                         Case No. 16-cv-3895 (WMW/SER)


## <u>NOTICE</u>

**Filings Objections:** This Report and Recommendation is not an order or judgement of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).